UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Dwayne Freeman,

        Plaintiff,

    -v-                    **16-CV-06668**
                            **DECISION AND ORDER**

Christopher Kirisits, Phil
Griffin, Colomba Misseritti,
Doug Lee, Cynthia Crowell,
John Burrows, Linda Gray,
Lidia Colak, Thomas Rinaldo,
Andrew Cuomo, and Rochester
Psychiatric Center,

        Defendants.

_____

## I.   Introduction

Plaintiff Dwayne Freeman ("plaintiff" or "Freeman"), former employee of defendant Rochester Psychiatric Center ("RPC"), an agency of the New York State Office of Mental Health ("OMH"), brings this *pro se* action pursuant to 42 U.S.C. § 1983 and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 701 *et seq.*, seeking monetary, declaratory and injunctive relief for violations of his federal civil rights. Plaintiff alleges that his employment was unlawfully suspended and terminated after he requested a reasonable accommodation to be exempt from working in the geriatric unit because it exacerbated his anxiety disorder. Defendants Christopher Kirisits ("Kirisits"), Phil Griffin, Colomba Misseritti ("Misseritti"), Doug Lee ("Lee"), Cynthia Crowell, John Burrows, Linda Gray ("Gray"), Lidia Colak, Thomas Rinaldo, Andrew Cuomo, and RPC (collectively, "defendants") have filed a motion to

dismiss the complaint for lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons stated below, the Court grants in part and denies in part defendants' motion to dismiss plaintiff's complaint.

## II. Factual Background

Plaintiff was employed by RPC as a Mental Hygiene Therapy Aide from July 3, 2000 to April 18, 2016.  Plaintiff alleges that, on or about December 4, 2014, RPC approved an FMLA application submitted by him in connection to his anxiety disorder.  Plaintiff asserts that his anxiety disorder stemmed in part from an ultimately unsubstantiated abuse allegation made against him by a coworker concerning a resident of the geriatric unit (hereafter referred to as the "E-1 Unit").  During the ensuing investigation, which took place between  October 2014 and February 3, 2015, plaintiff was allegedly forbidden from any contact with the residents or staff members of the E-1 Unit.  Plaintiff began seeing a therapist to treat his anxiety symptoms, which he told the therapist were exacerbated by working in the E-1 Unit.

In January or February 2015, plaintiff submitted a written request for a "reasonable accommodation" that relieved him any duties in E-1 Unit, at the recommendation of his therapist, Jeffrey Schumacher, LCSW.  Mr. Schumacher opined that plaintiff was at risk of having angry outbursts, among other symptoms, if he was

2

subjected to working with geriatric residents.  Plaintiff's request was sent to defendant Misseritti, the Director of RPC's Human Resources Office, who forwarded it to OMH's Affirmative Action Administrator, Vickie Eudell, on February 13, 2015.

On February 3, 2015, plaintiff was instructed by an RPC nurse administrator to report for work in the E-1 Unit when he returned to work.  Plaintiff refused to comply with this directive and requested to be assigned to another unit.  He also repeatedly rejected the same order when it was given to him by the Director of Nursing, defendant Kirisits, and defendant Gray.  Plaintiff was subsequently questioned by defendant Lee in the Personnel Office and sent home later that day.

Plaintiff then took a medical leave of absence from February 4, 2015 to February 18, 2015.  Before returning to work on February 19, 2015, plaintiff was informed during a meeting with defendant Misseritti that he was being suspended without pay pending the outcome of a termination proceeding resulting from his insubordination.

As an attachment to their motion to dismiss, defendants have submitted the "OPINION AND AWARD" decision issued by arbitrator Lise Gelernter on April 18, 2016, which contains her factual findings and determination of a second disciplinary hearing held against plaintiff on February 11, 2016.  The factual background contained in Ms. Gelertner's 2016 decision reveals the details of

3

plaintiff's first, expedited disciplinary hearing, which was related to the February 3, 2015 incident (the "first hearing"). In the instant complaint, plaintiff claims that all charges related to his alleged insubordination were based on his refusal to comply with orders due to documented medical reasons.

Plaintiff asserts that his unpaid suspension by defendants was "arbitrary in a constitutional sense" because they were aware that plaintiff had applied for a reasonable accommodation to be reassigned to another unit. Complaint, ¶ 76. Although plaintiff was found guilty of the charges presented during the first hearing, he was not recommended for termination because of his expressed willingness to return to work without restriction. Plaintiff reluctantly consented to the terms of the expedited arbitration award after being advised that he would have to otherwise endure the lengthy process of a full hearing.

The record reveals that on February 20, 2015, plaintiff had asked Ms. Eudell, who had been handling his reasonable accommodation request, to put the request on hold pending the outcome of his disciplinary proceedings. On May 14, 2015, plaintiff attempted to "revive" his accommodation request during a telephone call and email conversation with Ms. Eudell. In June 2015, Ms. Eudell advised plaintiff that his documentation was out of date and that he had to submit an updated medical form from his therapist.

The record indicates that plaintiff remained out of work on FMLA leave and worker's compensation leave following the first disciplinary hearing and suspension period until July 20, 2015. Upon returning to work on July 20, plaintiff was immediately asked to report to the E-1 Unit due to a staffing shortage. After plaintiff refused to do so, defendant Lee reviewed the insubordination policy with plaintiff and gave him a direct order to report to the E-1 Unit. Plaintiff again refused and as a result, Lee placed him on administrative leave.

On August 24, 2015, Ms. Eudell, having been advised that plaintiff was not currently working, notified him that she was closing out his application for a reasonable accommodation. On August 26, 2015, the OMH issued a notice that it was suspending plaintiff "without pay after finding that he was a potential danger to persons or property, or that his continued presence would severely interfere with operations." Due to his disciplinary history, performance evaluations, and a second incident of insubordination in less than one year, plaintiff was recommended for termination.

At his second disciplinary hearing, held on February 11, 2016, plaintiff acknowledged that he had not submitted the updated form in support of his application for a reasonable accommodation, but he nonetheless protested the closing of his application. He testified that he had been under the impression that he could not

revive his reasonable accommodation request until he had returned to work.  Plaintiff further testified that he believed his refusals to report to the unit fell into the health and safety exception of the insubordination policy, which allowed employees to refuse any order constituting a threat to health and safety.  Plaintiff went on to describe the tension headaches that he experienced as a result of the constant loud outbursts and patient noise that occurred on the E-1 Unit.  The factual findings of the second hearing indicated that plaintiff was subject to 17 disciplinary actions between 2009 and 2015.  In her April 18, 2016 decision, Ms. Gelernter, although acknowledging plaintiff's "15-year tenure with RPC," found plaintiff guilty of insubordination as charged in the August 26, 2016 notice and recommended his termination.  She also found that there was probable cause to suspend plaintiff without pay.

Plaintiff filed the present action against RPC and several individual RPC employees on October 11, 2016.

## III. Discussion

When considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume as true the factual allegations set forth in the complaint. Pleadings prepared by a *pro se* plaintiff, as here, are held to less stringent standards than those prepared by counsel, and  a Rule 12(b)(1) dismissal is not appropriate unless plaintiff's federal claim is

not even minimally plausible.  "The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence to support [his] claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995), *cert. denied*, 519 U.S. 808 (1996).

Pursuant to 42 U.S.C. § 1983, plaintiff asserts that defendants, acting under color of law, denied him his substantive due process right not to be terminated for requesting a reasonable accommodation, and that he was denied his procedural due process right to a fair hearing before the unpaid suspension and termination of his employment.  Plaintiff also alleges a claim under § 504 of the Rehabilitation Act, asserting that defendants' approval of his FMLA leave, which was based on his anxiety disorder, establishes a record of his disability and defendants' notice thereof.

## A.   Due Process Claims

Title 42 of the United States Code, Section 1983 "provides an instrument by which an individual deprived of a federal right by a person acting under color of state law may be compensated." *Eagleston v. Guido*, 41 F.3d 865, 875 (2d Cir. 1994), citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  Section 1983 itself creates no substantive rights but rather provides a procedure for redressing the deprivation of rights established elsewhere. *See Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993), *cert. denied*, 512

U.S. 1240 (1994). The necessary elements of a claim under 42 U.S.C. § 1983 are (1) conduct attributable at least in part to a person acting under color of state law and (2) the deprivation, by such conduct, of a right, privilege or immunity secured by the Constitution or laws of the United States. *See Eagleston*, 41 F.3d at 875-876, citing *Dwares v. City of N.Y.*, 985 F.2d 94, 98 (2d Cir. 1993).

Plaintiff contends that defendants deprived him of his property interest in his continued paid employment without due process of law. Defendants argue that plaintiff's § 1983 claim should be dismissed on the ground he could have pursued an Article 78 proceeding, and that the availability of state remedies is sufficient to satisfy due process requirements.

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). The two-step inquiry involved in analyzing a procedural due process claim asks "(1) whether the plaintiff possessed a liberty or property interest and, if so, (2) what process was due before he could be deprived of that interest." *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir.2002).

8

"To state a due process violation—procedural or substantive-Plaintiff must *first* show a deprivation of a constitutionally protected property or liberty interest." *Berrios v. State Univ. of N.Y. at Stony Brook*, 518 F.Supp.2d 409, 418 (E.D.N.Y.2007) (emphasis added), citing *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-62 (2d Cir. 1993), *cert. denied*, 510 U.S. 865 (1993). "It is only when such a right is established that the court may turn to a discussion of whether there has been a deprivation of that right without due process." *Id.*

Here, the Court finds that, even based on the most liberal construction of plaintiff's complaint, he fails to allege any facts to plausibly suggest that he was employed in such a manner to confer a guarantee of continued employment. The complaint alleges that plaintiff had a "constitutionally protected property interest in his continued employment stemm[ing] from The Collective Bargaining Agreement between The Civil Service Employment Association, Inc. ("C.S.E.A.") and the State of New York, which is effectuated by the provisions of the Public Employee's Fair Employment Act." Complaint, ¶ 32.

The Court has carefully reviewed the submissions attached to plaintiff's complaint and finds that there is nothing in the specific sections of the Collective Bargaining Agreement provided that give rise to his claim of a legitimate entitlement to his continued employment. There is, further, no other factual

9

assertions, contracts, or agreements in the record to support plaintiff's conclusory allegation that he has protected property interest in his employment. Consequently, plaintiff's procedural due process claims cannot survive defendants' motion to dismiss.

With respect to plaintiff's substantive due process claim, unlike procedural due process, this type of claim "refers not to particular hearing procedures, but circumscribes an 'outer limit' on permissible governmental action." *Berrios*, 518 F.Supp.2d at 418 (citation omitted). However, in light of the Court's determination that plaintiff has failed to satisfy the first step of the due-process inquiry by failing to establish a property interest in his continued employment, his substantive due process claim is also subject to dismissal. Therefore, neither plaintiff's procedural due process claims nor his substantive due process claims survive defendants' motion to dismiss. The Court therefore grants defendants' motion to dismiss plaintiff's due process claims.

### B. Equal Protection Claim

To the extent that the pleadings can be construed raise a "class of one" cause of action under the Equal Protection Clause, the Court agrees with defendants that this claim must be dismissed. Plaintiff's conclusory allegations that he was treated differently from another employee with the same job title and responsibilities are wholly insufficient to establish that "no rational person could regard the circumstances of the plaintiff to differ from those of

10

[the] comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *abrogated on other grounds*, *Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008). Apart from their job titles, plaintiff does not allege any facts to suggest that he and the other named employee were similarly situated in relevant respects or how they were treated differently. *See Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 143 (2d Cir. 2010). Consequently, to the extent that this claim has been raised, it is dismissed with prejudice.

**B.   Section 504 of the Rehabilitation Act of 1973 Claims**

A prima facie case of employment discrimination under the Rehabilitation Act requires a showing that: (1) plaintiff is an individual with a disability within the meaning of the Act; (2) he is otherwise qualified to perform the job in question; (3) he was excluded from the job solely because of his disability, and (4) his employer received federal funding. *See Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 135 (2d Cir. 1995); *see also* Rehabilitation Act of 1973, § 504(a), 29 U.S.C.A. § 794(a); *Harris v. Mills*, 572 F.3d 66, 73-74 (2d Cir. 2009).

The Americans with Disabilities Act of 1990 ("ADA") defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being

11

regarded as having such an impairment." 42 U.S.C. § 12102(1).  The term "qualified individual with a disability" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12112; 29 U.S.C. § 794(d).

Section 504, which is subject to the standards applied under the ADA, provides that employment discrimination thereunder includes "denying employment opportunities to [an] . . . employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such [employer] to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(A).  Defendants do not dispute that plaintiff was otherwise qualified for his position or that RPC receives federal funding.  The only argument advanced by defendants to defeat plaintiff's § 504 claim is that he failed to adequately establish having a "disability" for purposes of the Rehabilitation Act because he failed to allege any major life activity affected by his anxiety disorder.  However, to establish that he was regarded as having a disability, plaintiff was not required to plead that his impairment substantially limited any major life activity or present evidence as to what degree defendants believed that the impairment affected him. *See Kelly v. N.Y. State Office of Mental Health*, __ F.Supp.3d __, 2016 WL

12

4203470, at *10 (E.D.N.Y. Aug. 9, 2016); *see also* 42 U.S.C. § 12102(3) ("An individual meets the requirement [by] establish[ing] that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.").

Based on the remaining factual allegations related to this claim and a liberal construction of the *pro se* pleadings, the Court concludes that, at this early stage of the proceedings, plaintiff has raised a plausible claim that he was regarded as having a disability and that RPC failed to reasonably accommodate him in violation of the Rehabilitation Act. *See*, *e.g.*, *Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 540 (S.D.N.Y. 2014)(psychiatrist's notes clarifying that employee should be excused from certain assignments "appear to raise a plausible inference that [employer] was on notice of [employee's] alleged need to be excused from" those assignments, which raised a plausible failure to reasonably accommodate claim).

The facts alleged in the complaint, taken as true, establish that plaintiff notified his employer of his anxiety issues by January 2015, the time of his request for an accommodation exempting him from working in the geriatric unit. Plaintiff alleges that his request for an accommodation was not withdrawn prior to his disciplinary hearing and termination, which was based

on his refusal to work in the E-1 Unit due to his anxiety issues. The symptoms reported by his therapist to his employer included increased tension, headaches, difficulty concentrating, episodes of confusion, and difficulties with decision making. Moreover, plaintiff took FMLA leave for extended periods between February 2015 and July 2015, and his request for leave due to his "chronic condition" was approved by RPC in November 2014. *See* Complaint, Exhibit C. Consequently, the Court finds that plaintiff has stated a plausible claim that he was regarded by RPC as having a disability.

As an alternative ground for dismissal, defendants assert that plaintiff's claims against the state agency and Governor Cuomo, in his official capacity, are barred by sovereign immunity. However, "because the Rehabilitation Act was enacted pursuant to the Spending Clause of Article I, Congress can require states to waive their sovereign immunity for Rehabilitation Act claims as a condition of accepting federal funds." *Quadir v. N.Y. State Dep't of Labor*, 39 F.Supp.3d 528, 537 (S.D.N.Y. 2014)(internal quotation marks omitted). "Since the Rehabilitation Act does include such a requirement and New York does accept federal funds, New York has waived sovereign immunity with respect to Rehabilitation Act claims." *Id*. The Court concludes, therefore, that plaintiff's Rehabilitation Act claim against RPC survives the sovereign immunity analysis. Since plaintiff is able to assert his

14

Rehabilitation Act claim against the state agency itself, there is no justification for allowing plaintiff to also assert the same claims against the Governor in his official capacity. *See Hallett v. N.Y. State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 200 (S.D.N.Y. 2000).

The remaining individual defendants correctly contend plaintiff's claims against them, in their individual capacities, are also barred. Courts have held that individuals may not be held liable under the Rehabilitation Act in their individual capacities. *See Alster v. Goord*, 745 F. Supp. 2d 317, 339 (S.D.N.Y. 2010), citing *Candelaria v. Cunningham,* 2000 WL 798636, at *2 (S.D.N.Y. 2000). Therefore, the Court grants defendants' motion to dismiss the § 504 claims against the aforementioned individual defendants and Governor Cuomo in his official capacity, with prejudice, but denies dismissal of plaintiff's § 504 claim against RPC.

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss (Docket No. 9) is granted in part and denied in part as follows:

1. The defendants' motion to dismiss plaintiff's due process claims is granted.

2. The defendants' motion to dismiss plaintiff's equal protection claim is granted.

3.   The defendants' motion to dismiss plaintiff's employment discrimination claim pursuant to § 504 of the Rehabilitation Act in favor of all individual defendants is granted but is denied against defendant Rochester Psychiatric Center only.

4.   The Court denies as moot plaintiff's motion for a temporary restraining order (Docket No. 3), which arises out of the due process claims that are dismissed by this Court for the reasons stated in this Decision.

5.   The Court grants defendants' motion to dismiss the complaint in all other respects.

The Clerk of Court is further directed to amended the caption in this case to reflect the sole remaining defendant, Rochester Psychiatric Center, for purposes of the remaining cause of action under § 504 of the Rehabilitation Act of 1973.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
    MICHAEL A. TELESCA
United States District Judge

Dated:    February 6, 2017
          Rochester, New York

16