UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DWAYNE FREEMAN,

                    Plaintiff,          **No. 6:16-cv-06668(MAT)(MWP)**
                                        **DECISION AND ORDER**

       -vs-

ROCHESTER PSYCHIATRIC CENTER,

                    Defendant.
_____

## I.    Introduction

Proceeding pro se, Dwayne Freeman ("Plaintiff") filed this
action against Rochester Psychiatric Center ("RPC") asserting a
claim under Section 504 of the Rehabilitation Act of 1973,
29 U.S.C. § 701 et seq., arising out of his employment with, and
subsequent termination from, RPC. This case comes before the Court
upon the combined Report and Recommendation/Decision and Order
(Docket No. 153, as amended by Docket No. 154), dated August 30,
2018, issued by Magistrate Judge Marian W. Payson ("the D&O-R&R").

## II.   Background

In the R&R, Judge Payson recommended that Plaintiff's Second
Motion to Amend the Complaint (Docket No. 84) be granted in part
and denied in part. Specifically, Judge Payson recommended that
Plaintiff's requested to add proposed Counts 1-24, 27-29, 31-33,
and 35-54 be denied. As to Counts 1-24 and 35-54, Judge Payson
noted that this Court, in prior Decisions and Orders (Docket Nos.
17 & 43) had already determined them to be insufficient to state a
claim for relief. As to Counts 27-29 and 31-32, Judge Payson found

that they failed as a matter of law and recommended denial of them without leave to replead. Judge Payson further recommend denial of Plaintiff's request to add the Justice Center, Rinaldo, Gelernter, Scott, Ronda, New York Supreme Justice Center Officer, B.E.R. Field Agent, and B.E.R. Director as defendants to the action.

In the Decision and Order portion of the R&R, Judge Payson granted Plaintiff's request to amend the complaint to add proposed Counts 26, 30 and 34 and to add certain additional defendants: New York State Office of Mental Health ("OMH"); certain RPC employees (Christopher Kirisits, Phil Griffin, Colomba Misseritti, Doug Lee, Cynthia Crowell, Linda Gray, and Lidia Colak); certain employees of OMH (Vicky Eudell, Matthew Matney, and John Burrows); and New York State Governor Andrew Cuomo.

Judge Payson directed that Plaintiff file an amended complaint, as permitted in the D&O-R&R, by September 12, 2018. Judge Payson further stated that upon Plaintiff's filing of an amended complaint, the Clerk of the Court was directed to cause the United States Marshal to serve copies of the Summons, Amended Complaint, and the D&O-R&R upon newly named defendants OMH, Kirisits, Griffin, Misseritti, Lee, Crowell, Gray, Colak, Burrows, Matney, Eudell, and Cuomo.

Objections to the D&O-R&R were due 14 days from receipt. Neither Plaintiff nor Defendant filed any objections.

Plaintiff filed his First Amended Complaint (Docket No. 161) on September 7, 2018, prior to this Court ruling on the D&O-R&R.

Plaintiff did not include any of the defendants or causes of action that Judge Payson had recommended that this Court deny permission to add. However, Plaintiff did add the defendants and causes of action that Judge Payson had held, in the Decision and Order portion of the D&O-R&R, that Plaintiff could include.

## III. Standard of Review for Screening Pro Se Complaints

Section 1915 of Title 28 mandates that a district court dismiss an in forma pauperis complaint if the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). The district court is required to dismiss the action as soon as it makes such a determination. See id. Furthermore, 28 U.S.C. § 1915(e), as amended by the Prison Litigation Reform Act of 1995, applies to both prisoner and non-prisoner in forma pauperis actions. E.g., Simpson v. O'Sullivan, No. 09-CV-2334 JSETB, 2009 WL 3381585, at *1 (E.D.N.Y. Oct. 18, 2009) (citing Burns v. Goodwill Indus. of Greater New York, No. 01 CIV. 11311(DC), 2002 WL 1431704, at *2 (S.D.N.Y. July 2, 2002)). Plaintiff here was granted permission to proceed in forma pauperis. Therefore, the Court must screen the First Amended Complaint for sufficiency under 28 U.S.C. § 1915(e).

The Court notes that Plaintiff has attached a number of documents to his First Amended Complaint as Exhibits A through T (Docket No. 161, pp. 36-111 of 111). "[T]he complaint is deemed to

include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)); see also FED. R. CIV. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quoting Int'l Audiotext, 62 F.3d at 72).

## IV. Summary of Plaintiff's Allegations in the First Amended Complaint ("FAC")

At all times relevant to this action, Plaintiff worked as a Mental Health Therapy Aide ("MHTA") at RPC. On January 5, 2015, Plaintiff requested that RPC afford him a reasonable accommodation of not having to work on the floor with geriatric patients ("E1 Unit") due to his anxiety disorder. This request was accompanied by a note from his therapist, LCSW Schumacher, stating that because of the loud and noisy atmosphere in the E1 Unit, Plaintiff was at risk of a loud outburst.[1] FAC ¶ 43-44, 46.

---

[1] However, Plaintiff also states that beginning in October 2014, he had been forbidden to work on the E1 Unit because the New York State Justice Center was investigating a claim made by a patient against Plaintiff. See FAC ¶¶ 49-50.

On February 3, 2015, Plaintiff arrived at work and informed by non-party Nurse Administrator Tom Mraz ("Mraz") that he was assigned to work on the E1 Unit. FAC ¶¶ 48, 59. Plaintiff stated that he could not work on the E1 Unit because of his anxiety disorder. Id. ¶ 59. Mraz issued a direct order to Plaintiff to report to the E1 Unit; Plaintiff refused to comply the direct order. Id. ¶ 60.

At about 8:30 a.m., defendants Chief Nursing Officer Christopher Kirisits ("Kirisits") and Assistant Chief Nursing Officer Linda Gray ("Gray") arrived and gave Plaintiff a direct order to report to the E1 Unit. Plaintiff said that he would have to refuse the direct order because of his anxiety disorder, that he was willing to work in any other unit, and that he had submitted his request for a reasonable accommodation to the Personnel Office a month ago. FAC ¶ 62.

Accompanied by union representative Cheryl Shaw ("Shaw"), who is not a party this action, Plaintiff went to the Personnel Office where he was questioned by Associate Personnel Manager Doug Lee ("Lee") about why he had refused the direct orders. Lee read out loud RPC's insubordination policy which states that an employee may only refuse a direct order if it constitutes a health or safety concern. FAC ¶ 65 & Ex. E. Plaintiff reiterated that he could not work the E1 Unit because of his anxiety disorder. Plaintiff was sent home. Id. ¶¶ 66-67.

Plaintiff's primary care physician wrote him out of work due to stress from February 4, 2015, through February 18, 2015. FAC ¶ 70. Prior to returning to work on February 19, 2015, defendant Colomba Misseritti ("Misseritti") sent an email instructing him to report to the Personnel Office at 10 a.m. Id. ¶ 72. Plaintiff requested a union representative be present. When Shaw, the union representative arrived, they met with Lee and Misseritti, who informed Plaintiff that he was being placed on unpaid suspension pursuant to Article 33(g) of the collective bargaining agreement, and that RPC was seeking to terminate his employment based on his insubordination. Id. ¶¶ 73-74, 79.

Lee and Misseritti provided him with a Notice of Discipline ("NOD") which set forth an insubordination charge based on the February 3, 2015 incident, as well as six other unrelated charges of insubordination. FAC ¶ 75. The other six instances of insubordination were based on Plaintiff refusing "mandation (involuntary overtime)" between April 2014, and June 2014. Id. ¶ 75-76. Plaintiff admittedly refused "mandation [sic]" on these dates but says that he did so because he was experiencing back pain. Id. ¶ 76. Plaintiff asserts that these charges were "bogus" and that RPC was aware that he did go on Workers Compensation leave in June 2014, due to his back pain. Id. ¶ 77.

Plaintiff timely grieved his suspension. FAC ¶ 83. He was informed that he was required to appear at an expedited hearing on April 27, 2015. He did so, accompanied by union representative

Jennifer Rhee. Id. ¶¶ 84-85. At the expedited hearing, Plaintiff attempted to present evidence. Id. ¶¶ 87-88. Defendant John Burrows ("Burrows"), Labor Specialist for OMH, also was at the expedited hearing and indicated that he wanted Plaintiff terminated. Id. ¶ 89. Arbitrator Thomas Rinaldo, Esq. ("Rinaldo") informed the parties that he (Rindaldo) had no authority to decide the case; rather, the only purpose of the expedited hearing was to see if a deal could be reached. Id. ¶ 88. Rinaldo "dictated" the terms of a compromise to "both sides," namely, that Plaintiff would not be terminated but would return to work with no stipulations and waive back pay. Id. ¶ 90-92. Otherwise, Plaintiff would remain on unpaid suspension while he awaited a full evidentiary hearing. Id. ¶ 92. Plaintiff asserts that he was "coerced" into accepting the compromise and denies that he agreed to any of the terms or stipulations proposed by Rinaldo Id. ¶ 96.

Rinaldo issued his written decision that day. FAC ¶ 95 & Ex. H. Rinaldo found Plaintiff guilty of the insubordination charges outlined in the NOD, but determined that the State's proposed penalty of termination was inappropriate. Ex. H. Rinaldo further stated that Plaintiff had represented to him that he was "ready, willing, and able to return to work without any restriction and to comply with all of the work requirements of the employer" and agreed that he waived all right to back pay and benefits. Id.

Plaintiff returned to work at OMH as per the terms of the arbitrator's decision reached after the expedited hearing.

Plaintiff was out on Workers Compensation leave due to his back issue from May 1, 2015, through July 19, 2015.

During the time period from January 5, 2015, through August 5, 2015, Plaintiff attempted to make arrangements with defendant Vicki Eudell ("Eudell"), of OMH, to have an interview for the "interactive process" prescribed by the Rehabilitation Act.[2]

Plaintiff indicates that he returned to work on July 20, 2015, was directed to work on the E1 Unit, and refused, citing his anxiety disorder. FAC ¶¶ 109-15. As discussed above, he had agreed at the expedited hearing before the arbitrator that he was returning to work without any stipulations. Lee and Misseritti placed Plaintiff on administrative leave on July 20, 2015, pending an investigation of an "ongoing" incident.

On February 11, 2016, Plaintiff appeared at a full evidentiary hearing, at which he was represented by counsel hired by the Civil Services Employees Association Union. On April 18, 2016, arbitrator Lise Gelertner issued a decision finding, inter alia that he did not have a legitimate health/safety issue on July 20, 2015, that justified his refusal of a direct order. The arbitrator accordingly upheld RPC's decision to terminate him.

---

[2]

    To help achieve compliance with the Rehabilitation Act, an informal "'interactive process'" is contemplated "by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." Jackan v. N.Y.S. Dep't of Labor, 205 F.3d 562, 566 (2d Cir.), cert. denied, 531 U.S. 931 (2000).

**V.  Analysis of the FAC's Sufficiency**

    **A.  Counts One and Two: The Section 504 Rehabilitation Act Claims Against RPC and OMH, Respectively**

        **1.  Elements of a Section 504 Claim**

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). See, e.g., Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003). A plaintiff may base a discrimination claim under Section 504 "on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." Davis v. Shah, 821 F.3d 231, 260 (2d Cir. 2016) (citing Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009)). A plaintiff suing his employer for failure to make reasonable accommodations must establish four elements to make out a prima facie case: "(1) [the] plaintiff is a person with a disability under the meaning of the [Rehabilitation Act]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the] plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004).

## 2. Count One: Violation of Section 504 of the Rehabilitation Act Against RPC

The crux of Count One, asserted against RPC, appears to be Plaintiff's inability to arrange an interactive process interview with Eudell, an employee of OMH, regarding his request for a reasonable accommodation. See FAC ¶¶ 145-53. Plaintiff alleges that his attempt to obtain a reasonable accommodation for his disability (anxiety disorder) was "met with unreasonable resistance from state officials, and as such RPC has shown deliberate indifferent to Plaintiff's disability." Id. ¶ 153. Plaintiff also asserts at the Article 33 hearing, Burrows, an employee of OMH, suggested that Plaintiff was lying about the extent of his symptoms due to his anxiety disorder. Id. ¶ 154. Plaintiff alleges that "[t]hrough its state official, John Burrows, RPC and OMH drastically showed deliberate indifference to Plaintiff's disability." Id.

A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The Court assumes, for present purposes only, that Plaintiff has sufficiently pleaded the first three elements of a prima facie "reasonable accommodation" claim under the Rehabilitation Act. However, the FAC's allegations do not plausibly suggest how RPC denied him a reasonable accommodation based on his alleged disability. Indeed, Plaintiff's allegations in support of Count One fail to allege any involvement by RPC in the alleged denial of a request for reasonable accommodation premised

on his allegedly failed attempt to schedule an interactive process interview with Eudell. Neither Eudell nor Burrows are or were employees of RPC. Nor is there any suggestion that Eudell acted in concert with any employee of RPC. Burrows, moreover, was not involved at all in the attempt to schedule an interactive process interview.

Here, Plaintiff has not pleaded facts that would allow a reasonable inference that RPC is liable for the alleged misconduct. Therefore, Count One is dismissed.

### 3. Count Two: Violation of Section 504 of the Rehabilitation Act Against OMH

The allegations in the FAC under the heading for Count Two repeat, essentially verbatim, the substance of the allegations under Count One. Compare FAC ¶¶ 156-65 with FAC ¶¶ 145-55.

As noted above, Burrows, an OMH employee, was not involved at all in the attempt to schedule an interactive process interview in connection with reaching a reasonable accommodation for Plaintiff's alleged disability. Plaintiff's allegations simply do not allow an inference that Burrows was involved in denying him a reasonable accommodation.

With regard to Eudell, Plaintiff's allegations do not allow an inference that she engaged in unlawful conduct. Rather, the emails and other documents submitted by Plaintiff as exhibits to the FAC indicate that the inability to schedule an interactive process interview from January to August 2015, was occasioned by routine scheduling conflicts, Eudell's previously scheduled vacation time,

and her limited flexibility due to the fact that she was responsible for covering several facilities. See FAC Ex. I (emails between Plaintiff and Eudell). In addition, Plaintiff was out on Workers Compensation leave due to back issues for several months. See id. It also appears that Plaintiff was under the impression that the meeting could not occur while he was on Workers Compensation leave. While this belief was mistaken, there is no indication in the documents attached to the FAC that Eudell intentionally misled him or wilfully delayed in scheduling the interview.

Plaintiff requests the Court to draw the inference that OMH, in bad faith, refused to engage in the interactive process based on the fact that the interview with Eudell was not scheduled before Plaintiff was terminated. It is true that the interactive process interview never was scheduled because, one day after returning to work, Plaintiff was placed on administrative leave at RPC based on his refusal of a direct order to work on the E1 Unit due to his anxiety disorder. It is undisputed that, months earlier, Plaintiff had agreed to return to work without any stipulations (such as not having to work on the E1 Unit) and without any reasonable accommodations in place. In other words, Plaintiff was on notice, after the expedited hearing before Rinaldo, that he might be asked to work on the E1 Unit. The exhibits attached to the FAC undermine any "reasonable inference that [OMH] is liable," Iqbal, 556 U.S. at 678 (citation omitted), for a refusal to engage in the interactive

process. Therefore, Plaintiff's pleadings do not "plausibly suggest an entitlement to relief," id. at 681, on his claim that he was denied a reasonable accommodation under Section 504.

**C.    Count Three: 42 U.S.C. § 1983 Action for Violation of the Rehabilitation Act Against Defendants Kirisits, Griffin, Misseritti, Lee, Crowell, Gray, Colak, Burrows, Matney, Eudell, and Cuomo**

In Count Three, Plaintiff attempts to use 42 U.S.C. § 1983 as a mechanism to recover for the alleged violation of Section 504 of the Rehabilitation Act.

### 1.    Plaintiff May Not Bring a Parallel § 1983 Action with a Section 504 Action

District courts in this Circuit have reached differing conclusions on whether a public official be sued in his or her individual capacity under 42 U.S.C. § 1983 predicated upon alleged violations of the Rehabilitation Act. Contrast Marino v. City Univ. of New York, 18 F. Supp.3d 320, 336 n. 9 (E.D.N.Y. 2014) ("While '[§ ]1983 provides a cause of action for violations of federal statutes as well as the Constitution[,]' the ADA and Rehabilitation Act create enforceable rights indicating that Congress did not intend 'that plaintiffs [would] seek redress for violations of their ADA and Rehabilitation Act rights through the vehicle of § 1983.'") (quoting Bartlett v. N.Y. State Bd. of Law Examiners, 970 F. Supp. 1094, 1144–45 (S.D.N.Y. 1997), aff'd in part, vacated in part on other grounds, 156 F.3d 321 (2d Cir. 1998), cert. granted, judgment vacated on other grounds, 527 U.S. 1031 (1999);

citing Sinisgallo v. Town of Islip Hous. Auth., 865 F. Supp.2d 307, 333 (E.D.N.Y. 2012), appeal withdrawn (Aug. 23, 2012); Credle-Brown v. Conn. Dep't of Children & Families, 3:04-CV-1167, 2009 WL 1789430, at *1 (D. Conn. June 24, 2009); other citation omitted), with Stahura-Uhl v. Iroquois Cent. Sch. Dist., 836 F. Supp.2d 132, 146 (W.D.N.Y. 2011) (Skretny, D.J.) (concluding that Rehabilitation Act scheme is not "comprehensive" and does not preclude a parallel § 1983 claim).

The Second Circuit has not weighed in on this question, but the Ninth, Eighth, Fifth, and Eleventh Circuits have held that an individual cannot be sued under 42 U.S.C. § 1983 for violations of Section 504 of the Rehabilitation Act or the Americans with Disabilities Act ("ADA"). E.g., Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("hold[ing] that a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act") (citing Lollar v. Baker, 196 F.3d 603, 610 (5th Cir. 1999); Alsbrook v. City of Maumelle, 184 F.3d 999, 1011 (8th Cir. 1999) (en banc); Holbrook v. City of Alpharetta, 112 F.3d 1522 (11th Cir. 1997)); see also A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 806 (3d Cir. 2007) (holding that § 1983 is not available to provide a remedy for alleged violations of rights under Section 504 of the Rehabilitation Act). As the Fifth Circuit explained in Lollar,

> both the Rehabilitation Act and the ADA provide
> extensive, comprehensive remedial frameworks that address

-14-

> every aspect of [a plaintiff's claim] under section 1983.
> To permit a plaintiff to sue both under the substantive
> statutes that set forth detailed administrative avenue of
> redress as well as section 1983 would be duplicative at
> best; in effect such a holding would provide the
> plaintiff with two bites at precisely the same apple.

Lollar, 196 F.3d at 610. The Court finds the reasoning of the

Third, Fifth, Eighth, Ninth, and Eleventh Circuit Courts of Appeals

to be persuasive. Therefore, the Court concludes that a plaintiff

may not maintain a § 1983 action in addition to a Rehabilitation

Act cause of action where, as here, the only deprivation alleged

is a violation of the plaintiff's rights created by the

Rehabilitation Act. See Lollar, 196 F.3d at 610.

### 2. In Any Event, A Parallel § 1983 Action Fails for Lack of Personal Involvement by the Named Defendants

Even were the Court to follow Judge Skretny's decision in

Stahura-Uhl, supra, finding that a plaintiff may maintain a

parallel § 1983 action, Plaintiff's allegations fail to state a

plausible claim under § 1983 against any of the individual

defendants because he has not sufficiently alleged their personal

involvement in any Section 504 violation.

### a. Personal Involvement

"It is well settled in this Circuit that 'personal involvement

of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'" Wright v.

Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of

Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). "Government

officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of <u>respondeat superior</u>." <u>Iqbal</u>, 556 U.S. at 676. Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Id.</u>

The Second Circuit has described a number of ways that a supervisory defendant's personal involvement may be shown: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

### b. The Defendants

The allegations in support of Count Three do not specify any defendants by name except Governor Andrew Cuomo. "An individual cannot be held liable for damages under § 1983 'merely because he held a high position of authority,' but can be held liable if he was personally involved in the alleged deprivation." <u>Back v.</u>

<u>Hastings On Hudson Union Free Sch. Dist.</u>, 365 F.3d 107, 127 (2d Cir. 2004) (quoting <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996)). Plaintiff asserts that Governor Cuomo received actual notice of the Section 504 violation because Plaintiff sent him a letter on February 5, 2018, but Cuomo acted with deliberate indifference in failing to respond or direct any of his staff to respond, or to rectify the situation. <u>See</u> FAC ¶ 171. This allegation is insufficient to adequately allege Governor Cuomo's personal involvement. <u>See</u>, <u>e.g.</u>, <u>Colon</u>, 58 F.3d at 873 (allegations that prisoner sent letter to superintendent of prison, complaining that contraband had been planted in his cell, prior to prisoner's hearing, and that superintendent did not investigate, was not sufficient to subject superintendent to liability under § 1983 for personal involvement in deprivation of prisoner's constitutional rights).

The Court turns next to the RPC employees (Kirisits, Griffin, Misseritti, Lee, Crowell, Gray, and Colak) and the OMH employees (Burrows, Matney, and Eudell) against whom Plaintiff seeks to assert Count III. Plaintiff conclusorily asserts that "each named Defendant" had "direct participation and <u>personal</u> <u>involvement</u> in depriving Plaintiff of his statutory right pursuant to" Section 504 of the Rehabilitation Act. FAC ¶ 170 (emphases in original). This is merely a legal conclusion couched as a factual averment, to which the Court gives no effect. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (to avoid dismissal for failure to state

a claim, a plaintiff is "obligat[ed] to provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions") (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (second alteration in original)).

### D. Count Four: Equal Protection Claim Against Defendants Kirisits, Griffin, Misseritti, Lee, and Gray

In Count Four, Plaintiff asserts a claim under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff alleges that he was treated differently from a similarly situated coworker, BeRanna Divine ("Divine"), who also held the position of MHTA and who has an unspecified disability. Plaintiff claims that the named Defendants did not "put up roadblocks" when Divine requested to participate in the interactive process required under the Rehabilitation Act. <u>See</u> FAC ¶¶ 183-85. Plaintiff asserts that the disparate treatment by the named Defendants was based on "gender and other 'impermissible' reasons." FAC ¶ 178.

The Fourteenth Amendment's "Equal Protection Clause requires that the government treat all similarly situated people alike." <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001) (citation omitted). "Persons with disabilities are not a suspect class and review of their equal protection claims are subject to rational basis review." <u>Marino v. City Univ. of New York</u>, 18 F. Supp.3d 320, 340 (E.D.N.Y. 2014) (citing <u>City of</u>

Cleburne v. Cleburne Living Center, 473 U.S. 432, 442–47 (1985)).

Thus, to proceed on his equal protection claim as a "class of one"

plaintiff, Plaintiff must show that "[1] [he] has been

intentionally treated differently from others similarly situated

and [2] that there is no rational basis for the difference in

treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564

(2000).

"[C]lass-of-one plaintiffs must show an extremely high degree

of similarity between themselves and the persons to whom they

compare themselves." Clubside, Inc. v. Valentin, 468 F.3d 144, 159

(2d Cir. 2006); accord Ruston v. Town Bd. for Town of Skaneateles,

610 F.3d 55, 59 (2d Cir. 2010). Plaintiff's asserted basis for

finding that he and Divine are "similarly situated" is that they

"both requested and asked the Defendant to provide a reasonable

accommodation." FAC ¶ 182. This allegation is inadequate to raise

Plaintiff's "right to relief above the speculative level." Twombly,

550 U.S. at 555.

With regard to the element of "intentional or purposeful

discrimination[,]" Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir.

2005), Plaintiff's conclusory allegations of disparate treatment

are based solely on his own personal opinion that he was subjected

to discriminatory animus. This is insufficient to satisfy

Plaintiff's pleading burden. See Morales v. New York, 22 F. Supp.3d

256, 275 (S.D.N.Y. 2014) (plaintiff failed to state equal

protection claim where complaint offered "conclusory allegations of

disparate treatment and his personal opinion that such treatment was motivated by discriminatory intent") (citing, <u>inter alia</u>, <u>Hamzik v. Office for People with Developmental Disabilities</u>, 859 F. Supp.2d 265, 280 (N.D.N.Y. 2012) (similar)); <u>see generally</u> <u>Thomas v. City of New York</u>, 143 F.3d 31, 37 (2d Cir. 1998) (affirming dismissal of an Equal Protection Clause claim when "plaintiffs did not allege sufficient facts to support discriminatory intent. . .").

### E. Leave to Replead is Unwarranted

Generally, courts are to read <u>pro se</u> complaints liberally. <u>Branum v. Clark</u>, 927 F.2d 698, 705 (2d Cir. 1991). Leave to amend should be granted "when a liberal reading of the complaint gives any indication that a valid claim might be stated." <u>Gomez v. USAA Fed. Sav. Bank</u>, 171 F.3d 794, 795 (2d Cir. 1999). The Court cannot find that the First Amended Complaint, liberally read, suggests that Plaintiff has valid claims that he has pleaded inartfully because he is <u>pro se</u>. The problem with Plaintiff's causes of action "is substantive; better pleading will not cure it. Repleading would thus be futile." <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

## VI. Conclusion

For the foregoing reasons, the Court adopts the Report and Recommendation portion of the D&O-R&R (Docket No. 154), recommending that Plaintiff's Motion to Amend (Docket No. 84) be denied to the extent that Plaintiff not be permitted to assert

proposed Counts 1-24, 27-29, 31-33, and 35-54, and not be permitted to add the Justice Center, Rinaldo, Gelernter, Scott, Ronda, NYS Justice Center Officer, B.E.R. Field Agent, and B.E.R. Director as defendants. However, the Court finds that the First Amended Complaint (Docket No. 161) does not survive screening under the PLRA. Therefore, it is dismissed with prejudice without leave to replead. The Clerk of Court is directed to terminate the Motion to Amend (Docket No. 84).

      **SO ORDERED.**

                              S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     September 21, 2018
             Rochester, New York